NUMBER 13-04-00582-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG

 

EDNA LALUSIN, ET AL., Appellants,


v.
 


RAJ SUBNANI, Appellee.

 


On appeal from the 105th District Court of Kleberg County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza

Memorandum Opinion by Chief Justice Valdez


 Appellant, Edna Lalusin, Individually, as next friend of C. L., a minor, and as
representative of the Estate of Antonio Lalusin, Diana Lalusin, and Brian Lalusin, appeals
a take-nothing judgment awarded appellee, Raj Subnani, M.D., following a medical
malpractice jury trial. In four issues, appellant contends (1) a witness's statement in front
of the jury that he was threatened constituted incurable error, (2) the trial court erred in
admitting testimony from treating physicians who were not properly designated as experts,
(3) the evidence is factually insufficient to support the jury's finding that appellee was not
negligent, and (4) cumulative error or the interests of justice require a new trial. Appellee
did not file a reply brief. We affirm.

A. Factual and Procedural Background

 On August 16, 2001, Antonio Lalusin was admitted to Memorial (Christus Spohn)
Hospital in Corpus Christi where he was diagnosed with an intestinal blockage. Lalusin
subsequently underwent a surgical procedure known as a exploratory laparotomy. The
surgery proved to be successful as Lalusin experienced two post-operative bowel
movements. Lalusin was subsequently discharged on August 22. (1)

 Soon after the surgery, Lalusin's health began to deteriorate. (2) On August 25,
Lalusin's wife took him to a hospital located in Kingsville, Texas. (3) At the hospital, Lalusin
was cared for by Jose Ugarte, M.D., and Adetola Talabi, M.D. After four days of
observation, Lalusin's health continued to decline and Dr. Ugarte decided that surgery was
necessary. On August 30, Dr. Subnani, a surgeon from Alice, Texas, was called to
Kingsville by Dr. Ugarte. After examining Lalusin and his records, Dr. Subnani decided to
perform a second exploratory laparotomy. The surgery began at 9:00 p.m. and ended at
12:26 a.m. Lalusin coded at 6:26 a.m. and was pronounced dead at 8:30 a.m.,
approximately twelve hours after Dr. Subnani began surgery. 

 Appellant filed suit against Dr. Subnani, claiming he failed to recognize ordinary care
in the medical care and treatment of Lalusin and that this negligence caused Lalusin's
death. (4) The case was tried to a jury. In response to the broad form question of whether
"the negligence, if any, of Dr. Subnani, proximately cause[d] the death of Antonio Lalusin,"
the jury answered "No." The court entered a take nothing judgment, and appellant entered
a motion for new trial on factual sufficiency grounds. The court denied appellant's motion
for new trial, and this appeal ensued. 

B. Improper Statement

 In her first issue, appellant contends that a statement by Dr. Ugarte, in front of the
jury, that he had just been threatened constituted incurable error such that she is entitled
to a new trial. Appellant argues that even though she did not object to the statement at
trial, this issue was preserved for review in their motion for new trial. We disagree.

 Generally, to preserve a complaint for appellate review, a party must present to the
trial court a timely request, objection, or motion, state the specific grounds thereof, and
obtain a ruling. Tex. R. App. P. 33.1(a)(1). In her motion for new trial, appellant merely
states, "Defendant's jury argument was incurably erroneous." This statement does not
state the specific grounds upon which appellants based this objection, nor does it state the
objection in such a way that it can be clearly identified and understood by the court. See
id; see also Tex. R. Civ. P. 321 ("Each point relied upon in a motion for new trial shall briefly
refer to that part of . . . proceedings which are designated to be complained of, in such a
way that the objection can be clearly identified and understood by the court."). Thus, we
conclude that appellant failed to properly object to preserve error.

 Even assuming error, and that the error was preserved, we must determine whether
it was incurable. Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968); UMLIC VP
L.L.C. v. T&M Sales & Envtl. Sys., Inc., 176 S.W.3d 595, 617 (Tex. App.-Corpus Christi
2005, pet. denied). The test for incurable error is whether the comments considered in
their proper setting, were reasonably calculated to cause such prejudice to the opposing
litigant that a withdrawal by counsel or an instruction by the court, or both, could not
eliminate the probability that it resulted in an improper verdict. Double Ace, Inc. v. Pope,
190 S.W.3d 18, 30 (Tex. App.-Amarillo 2005, no pet.).

 After Dr. Ugarte was called as a witness and the oath was administered, he stated,
"I want to say that I was just threatened." Dr. Ugarte was instructed by the trial judge to
take the witness chair. Dr. Ugarte then testified on direct and cross examination. 
Following his testimony, Dr. Ugarte once again stated to the trial judge, "Sir, I was
threatened." The trial judge replied, "Well, let's talk about those matters in a few minutes. 
Please step outside for a few minutes." The jury was then recessed for lunch. Then,
outside of the presence of the jury, the trial judge allowed Dr. Ugarte to describe the threat
made against him. The jury heard only that Dr. Ugarte was threatened. At no time did the
jury hear the witness's comments regarding the threat, who threatened him, or the nature
of the threat. Therefore, we find that Dr. Ugarte's comments did not rise to the level of
incurable error. See id. Appellants' first issue is overruled.

C. Admission of Treating Physicians' Testimony

 In her second issue, appellant contends that the trial court erred in admitting
testimony from treating physicians who were not properly designated as experts. 

 Prior to the presentation of evidence by appellee, appellant objected to any expert 
witness testimony by Dr. Talabi and Dr. Ugarte, on the ground that appellee failed to
disclose these witnesses as experts in accordance with the Texas Rules of Civil Procedure. 
Appellee responded that these two witnesses were just material witnesses of relevant facts
and stated he had no problem with the objection to any expert testimony from these
doctors. The trial court sustained appellant's' objection, and the witnesses testified.

 Appellant argues that the trial court made inconsistent rulings when first overruling
and subsequently sustaining objections regarding Dr. Talabi's testimony regarding whether
or not an operation would have helped the decedent, Dr. Talabi's testimony that the
decedent had septicemia, which caused his death, and the definition of septicemia. 
However, appellant fails to provide a clear and concise argument for the contentions made,
and furthermore, they fail to provide us with any citation to authority. See Tex. R. App. P.
38.1(h). Accordingly, appellant's second issue is overruled.

D. Factual Sufficiency 

 In her third issue, appellant contends that the evidence is factually insufficient to
support the jury's finding that appellee was not negligent. Specifically, appellant argues
that she offered clear, positive, and direct testimony that appellee breached the standard
of care and proximately caused the death of Lalusin, and appellee offered no expert
testimony, thus, the jury's finding was against the great weight and preponderance of the
evidence. 

 When a party attacks the factual sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Med. Specialist Group, P.A. v. Radiology
Assocs., L.L.P., 171 S.W.3d 727, 730 (Tex. App.-Corpus Christi 2005, pet. denied). We
must consider and weigh all of the evidence, and can set aside a verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Dow Chem. Co., 46 S.W.3d at 242; Med. Specialist Group, P.A., 171 S.W.3d at 730. 
While a court of appeals must "detail the evidence . . . and clearly state why the jury's
finding is factually insufficient" when reversing a jury verdict, it need not do so when
affirming a jury verdict. Gonzalez v. McAllen Med. Ctr., Inc., 195 S.W.3d 680, 681 (Tex.
2006).

 Appellants contend that because their expert, William Owen Cramer, M.D., testified
that appellee's negligence proximately caused the injuries of the deceased based on a
reasonable medical probability, and no expert testimony was produced by appellee to
refute Dr. Cramer's assertions, the evidence is factually insufficient to support the jury's
verdict of no negligence.

 To prevail on a medical malpractice claim, the burden is on the plaintiff to establish
four elements: (1) a duty by the physician to act according to a certain standard of care,
(2) a breach of the applicable standard of care, (3) injury or harm to the plaintiff, and (4)
a causal connection between the breach of the applicable standard of care and the injury
or harm. Krishnan v. Ramirez, 42 S.W.3d 205, 212 (Tex. App.-Corpus Christi 2001, pet.
denied). To establish proximate cause, a plaintiff must prove both (1) cause-in-fact, and
(2) foreseeability. Duff v. Yelin, 751 S.W.2d 175, 176 (Tex. 1988). To show cause-in-fact,
plaintiffs are required to establish a causal connection between the injuries suffered and
the negligence of appellants based upon "reasonable medical probability," not mere
conjecture, speculation, or possibility. See Park Place Hosp. v. Estate of Milo, 909 S.W.2d
508, 511 (Tex. 1995); Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 400 (Tex. 1993);
Duff, 751 S.W.2d at 176. The ultimate standard of proof on causation is whether, by a
preponderance of the evidence, the negligent act or omission is shown to be a substantial
factor in bringing about the harm and without which the harm would not have occurred. 
Park Place Hosp., 909 S.W.2d at 511; Kramer, 858 S.W.2d at 400; Brownsville Pediatric
Ass'n v. Reyes, 68 S.W.3d 184, 188-89 (Tex. App.-Corpus Christi 2002, no pet.). 
Reasonable probability is determined by the substance and context of the opinion, and
does not turn on semantics or on the use of a particular term or phrase. Arlington Mem'l
Hosp. Found., Inc. v. Baird, 991 S.W.2d 918, 922 (Tex. App.-Fort Worth 1999, pet.
denied) (citing Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 500 (Tex. 1995)). 
Unless the medical treatment at issue is a matter of common knowledge or is within the
experience of the layman, expert testimony is required to establish negligence. Hood v.
Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977); see Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 876 (Tex. 2001) (recognizing necessity of expert testimony in
medical malpractice cases). 

 The law is clear. The burden of proof was on appellants to prove, by expert
testimony, that based upon a reasonable medical probability the injuries suffered by the
decedent were causally linked to the negligent acts of appellee. See Park Place Hosp.,
909 S.W.2d at 511; Kramer, 858 S.W.2d at 400; Duff, 751 S.W.2d at 176. Appellant
provides this court with no authority, and we find none, that states that a defendant, such
as appellee, is required to produce expert testimony in a medical malpractice case. 
Although appellants did present expert testimony regarding the negligence and proximate
cause of Lalusin's injuries, as the exclusive judge of the credibility of the witnesses and the
weight to be given their testimony, the jury was entitled resolve conflicts or inconsistencies
in any witness's testimony, believe or disbelieve any witness, or accept lay over expert
testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 

 Having considered and weighed all of the evidence, we cannot say that the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Appellee produced the testimony of two treating physicians of the decedent, who
presented conflicting evidence to appellant's expert testimony regarding the condition,
care, prognosis and diagnosis of the decedent. The jury was entitled to resolve the
conflicts and believe the treating physicians' testimony over appellant's expert testimony. 
See McGalliard, 722 S.W.2d at 697. Appellant's third issue is overruled.

 In his final issue, appellant argues that the circumstances of this case requires this
Court to remand in the interest of justice. See Tex. R. App. P. 43.3(b). Appellant
misperceives the law relating to remands in the interest of justice. "It is well settled that an
errorless judgment of a trial court cannot be reversed in the interest of justice or to permit
the losing party to have another trial. Uselton v. State, 499 S.W.2d 92, 99 (Tex. 1973);
Gonzalez v. Am. Postal Workers Union, 948 S.W.2d 794, 797 (Tex. App.-San Antonio
1997, writ. denied). Rather, a remand in the interest of justice is appropriate when the
judgment is erroneous, but rendition would for some reason be unfair. See Westgate, Ltd.
v. State, 843 S.W.2d 448, 455 (Tex. 1992). Because this case does not present reversible
error, we overrule appellant's last point of error. 

 The judgment of the trial court is affirmed. 

 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 14th day of June, 2007.

 


1. The record indicates that Lalusin requested to be discharged despite medical advice that he remain
in the hospital for a few more days. 
2. Lalusin began to vomit constantly and experienced severe pain in his abdominal area. 
3. The record indicates that, Edna Lalusin, Lalusin's wife, is a registered nurse employed at the same
Kingsville hospital that admitted her husband. 
4. Appellants first amended petition alleged that Dr. Subnani proximately caused the death of Antonio
Lalusin in one or more of the following ways: (1) failed to provide adequate post surgical follow up care; (2)
failed to return Lalusin to the operating room to look for and stop any abdominal bleeding; (3) failed to
adequately resuscitate; (4) failed to provide a timely and adequate blood supply to Lalusin to replenish the
blood he was losing following abdominal surgery; (5) failed to monitor Lalusin while in the recovery room; and
(6) failed to provide timely and proper care to Lalusin following surgery.